IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD HOUSTON,

     Plaintiff,

  v.

CITY OF ATLANTA and SGT.
MICHELE MCKENZIE, in her
individual capacity,

     Defendants.

CIVIL ACTION FILE NO.

1:15-CV-03112-TWT-WEJ

**ORDER AND
NON-FINAL  REPORT  AND  RECOMMENDATION**

Plaintiff, Richard Houston, a Sergeant with the Atlanta Police Department ("APD"), filed this civil rights action against his employer, the City of Atlanta ("City"), and his former supervisor, Sgt. Michelle McKenzie.  Plaintiff seeks to recover against the City for alleged sexual harassment by Sgt. McKenzie in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (see Compl. [1] Count I); to recover against both the City and Sgt. McKenzie for alleged retaliation in violation of Title VII (id. Count II); to recover against the City and Sgt. McKenzie under 42 U.S.C. § 1983 for their violation of his Fourteenth Amendment right to equal protection of the laws (id. Count III); to recover against the City for its alleged negligent supervision and retention of

high-ranking officers (id. Count IV); and to recover against Sgt. McKenzie for her alleged intentional infliction of emotional distress ("IIED") upon him (id. Count V).

Now pending before this Court is Defendants' Motion to Dismiss [5]. For the reasons explained below, the undersigned **RECOMMENDS** that said Motion be **GRANTED IN PART and DENIED IN PART**.

## I.    STANDARDS GOVENRING A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss, all of the factual allegations in the complaint must be accepted and construed in the light most favorable to the plaintiff.  Young Apts., Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008); Beck v. Deloitte & Touche, 144 F.3d 732, 735 (11th Cir. 1998).  A motion to dismiss does not test the merits of a case, but only requires that "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'"  Mills v. Foremost Ins. Co., 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

2

recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'--'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

## II.    **THE COMPLAINT'S ALLEGATIONS**[1]

Sergeant McKenzie supervised plaintiff from March until December 2013. (Compl. ¶ 14.)   Plaintiff claims that Sgt. McKenzie frequently made sexual advances toward him.[2]  (Id. ¶ 15.)  However, the only incident alleged while Sgt. McKenzie supervised plaintiff occurred on March 28, 2013, when Sgt. McKenzie made sexual motions toward plaintiff, thrusting her pelvic area in his direction as she stood over him at his desk.  (Id. ¶ 18.)  Later that day, plaintiff met with Sgt.

------------

[1] The Complaint is twenty-seven pages long and has sixty-nine paragraphs. Therefore, the Court includes only those allegations pertinent to resolution of the instant Motion.

[2] Plaintiff asserts that Sgt. McKenzie's inappropriate activity toward him dates back to 2003 when they were both APD officers, and continued into 2009, when they were both APD investigators.  (Compl. ¶ 15.)

McKenzie and Lt. Paden to discuss their issues and to attempt to come to a resolution.  (Id. ¶ 19.)

On April 2, 2013, plaintiff alleges that Sgt. McKenzie announced during a CID meeting that he could not be allowed to work a previously scheduled event at Turner Field, and did so in a manner that intimated and embarrassed him. (Compl. ¶ 20.)   Plaintiff believed that Sgt. McKenzie took these actions in retaliation for his refusal of her sexual advances and his complaint to Lt. Paden. (Id.)  On April 3, 2013, plaintiff met with Captain Gibbs and informed him about the incident that had occurred on April 2.  (Id. ¶ 21.)

On April 8, 2013, Sgt. McKenzie, plaintiff, and his union representative met with Major Bryant to inform him about the encounters that had taken place between him and Sgt. McKenzie.  (Compl. ¶ 22.)   At the conclusion of the meeting Major Bryant asked plaintiff to give him some time to look into things, and he instructed plaintiff to speak directly with him if he felt that things had not changed or been resolved.  (Id.)  On April 16, 2013, plaintiff met with Major Bryant and again expressed his concerns regarding Sgt. McKenzie, stating that he felt that she was retaliating against him; however, Major Bryant gave no indication that any further investigation would occur.  (Id. ¶ 23.)  On April 18, 2013, plaintiff filed a formal complaint with Sgt. Fred Watson of the APD's

4

Office of Professional Standards ("OPS") alleging that Sgt. McKenzie had created a hostile work environment for him.  (Id. ¶ 24).

In September and October 2013, plaintiff alleges that Sgt. McKenzie began piling work on him and unfairly prepared a counseling form on him for failure to add case notes to files when he had not been given a deadline to do so.  (Compl. ¶¶ 25-27.)   On October 22, 2013, plaintiff returned to the OPS to receive an update on his complaint, but learned that it had been lost.  (Id. ¶¶ 28, 31.)  On that same day, plaintiff then filed a grievance over that failure to take action on his complaint, but none of his superior officers resolved it.  (Id. ¶ 29.)  The next day, plaintiff received an email from the OPS stating that it had reviewed his concerns with Sgt. McKenzie and that his allegations did not rise to the level required to open an official investigation.  (Id. ¶ 32.)  He subsequently filed a grievance over the OPS's failure to investigate his complaint.  (Id. ¶ 33.)

On December 3, 2013, plaintiff asserts that Sgt McKenzie unfairly denied him sick days.  (Compl. ¶ 34.)  Also on that day, Sgt. McKenzie ordered plaintiff to bring his union representative into the office the next day because an OPS package had been opened and he needed to answer questions; however, plaintiff could not make the meeting.  (Id. ¶ 35.)  On December 19, 2013, Sgt. McKenzie again approached plaintiff regarding the OPS package and told him to be

5

prepared to answer questions the next day; however, that meeting did not occur. (Id.)

On January 7, 2014, Sgt. McKenzie opened an OPS package against plaintiff which accused him of misconduct for failing to work the cases assigned to him in October 2013. (Compl. ¶ 36.) Plaintiff alleges that Sgt. McKenzie did this in retaliation for the OPS complaint he had filed in April 2013. (Id.) On April 24, 2014, the APD sustained the OPS complaint that Sgt. McKenzie had filed against plaintiff. (Id. ¶ 37.) He received a category B violation, which results in a two-year probationary period in which an officer can be suspended or terminated if another violation occurs. (Id.) He also received a written reprimand, which was placed in his personnel file. (Id.)

On May 7, 2014, plaintiff filed a charge of discrimination with Equal Employment Opportunity Commission ("EEOC"). (See Compl. Ex. A [1-1].) In the section of the charge which asks what type of discrimination is alleged, plaintiff placed an "X" in the box beside the word "Retaliation." (Id.) Under the heading "Date(s) discrimination book place," plaintiff listed the earliest date as April 1, 2013, and the latest date as March 20, 2014. (Id.) The particulars of discrimination alleged in the charge are as follows:

> I. I was hired as a Police Officer by the above named employer in March 2003. I was harassed by my supervisor Sergeant Michelle McKenzie. I complained to my employer about the unwelcome conduct in April of 2013, however, no corrective

action was taken.  I was promoted to Sergeant on or about 3/13/14.  I was disciplined, on or about 3/20/14, in retaliation for opposing discrimination.

II.   Employer's reason for adverse employment action:  I was given a level B reprimand for unsatisfactory performance.

III.   I believe I have been discriminated against in retaliation for participation in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.)

The next event alleged in the Complaint did not occur until October 9, 2014, when plaintiff alleges that he was denied a transfer to another location. (Compl. ¶ 38.)  Plaintiff alleges that the most senior Sergeant is usually awarded the transfer; however, in retaliation for his complaint, grievance, and EEOC charge, the APD awarded the transfer to a less senior employee, Sgt. Pettis.  (Id.)

## III.   DISCUSSION

As noted above, plaintiff alleges Title VII hostile work environment sexual harassment against the City (Count I); Title VII retaliation against the City and Sgt. McKenzie (Count II); denial of his Fourteenth Amendment equal protection rights enforced through Section 1983 against the City and Sgt. McKenzie (Count III); negligent supervision/retention against the City (Count IV); and IIED against Sgt. McKenzie (Count V).  Defendants seek dismissal of all Counts of the Complaint.  The Court addresses the parties' arguments by Count below.

7

A.     **Defendants' Motion to Dismiss Count I Should Be Granted**

1.     **Plaintiff Failed to Exhaust Administrative
Remedies Regarding Count I (Harassment)**

Before filing a discrimination or retaliation claim in federal court, a plaintiff first must file a charge of discrimination with the EEOC.  Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam). The purpose of the exhaustion requirement is to allow the EEOC the first opportunity to investigate the alleged practices and to perform its role "in obtaining voluntary compliance and promoting conciliation efforts."  Id. (citation and internal quotation marks omitted).  Judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC charge, but the Eleventh Circuit has cautioned "that allegations of new acts of discrimination are inappropriate" for a post-charge judicial complaint.  Id. at 1279-80. Consequently, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Id. at 1280 (citation and internal quotation marks omitted). However, "the scope of an EEOC complaint should not be strictly interpreted." Id.  In order to establish a hostile work environment claim, the plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment.'" <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).

Plaintiff checked the box on the EEOC charge alleging retaliation. Although the charge includes the words "harassed" and "unwelcome conduct," there are no facts alleged in the charge "that reasonably points to the kind of pervasive and oppressive conditions that would allow [this Court] to conclude that [plaintiff] intended to have the EEOC investigate the workplace for a hostile work environment." <u>Ramon v. AT&T Broadband</u>, 195 F. App'x 860, 866 (11th Cir. 2006) (per curiam) (because a hostile work environment claim could not have reasonably been expected to grow of the allegations made by Ramon in her EEOC charge, the district court did not err by finding that she failed to exhaust that claim); <u>Green v. Elixir Indus., Inc.</u>, 152 F. App'x 838, 841 (11th Cir. 2005) (per curiam) ("Nothing in Green's EEOC charge related to incidents of harassment, nor did anything mention the dates on which they occurred. Because the facts alleged in Green's EEOC charge form cannot be said to encompass a hostile work environment claim, we affirm the district court's finding that his claim was therefore procedurally deficient."); <u>Patterson v. WMW, Inc.</u>, No. 1:11-CV-3172-WSD-SSC, 2012 WL 3261290, at *6 (N.D. Ga. June 15, 2012) <u>report & recommendation adopted</u> (N.D. Ga. Aug. 8, 2012) (sexual harassment claim in complaint is barred for failure to include it in plaintiff's EEOC charge, because

the facts alleged in the charge could not have reasonably been extended to encompass a claim for sexual harassment).   Therefore, Count I (hostile work environment sexual harassment) should be dismissed for failure to exhaust administrative remedies.

### 2.   A Hostile Work Environment Claim is Time Barred

Even if plaintiff had alleged facts in his EEOC charge sufficient to trigger an investigation of a hostile work environment sexual harassment claim (and thus exhausted administrative remedies as to that claim), any hostile work environment sexual harassment claim is barred by the so-called 180-day rule.

A plaintiff in a non-deferral state like Georgia must file a charge of discrimination with the EEOC within 180 days of the alleged act of discrimination.   See 42 U.S.C. § 2000e-5(e)(1); see also Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003) ("Because Georgia is a non-deferral state, Watson was required to file a Charge of Discrimination within 180 days of the alleged unlawful employment action.").   The 180 days begins to run from the date the employee knows, or reasonably should know, that he has been discriminated against.   Stafford v. Muscogee Cty. Bd. of Educ., 688 F.2d 1383, 1387 (11th Cir. 1982); see also Hill v. Metro. Atlanta Rapid Transit Auth., 841 F.2d 1533, 1545 (11th Cir. 1988).   If an employee fails to file an EEOC charge before the 180-day limitations period elapses, his subsequent lawsuit is

procedurally barred and must be dismissed.  See Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980) (explaining that Title VII claim was procedurally barred because the 180-day period commenced at the time the tenure decision was made and communicated to plaintiff, even though the termination did not occur until later).[3]

The Supreme Court has recognized that the statute of limitations for filing EEOC charges works differently for disparate treatment and hostile work environment cases.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  "A discrete . . . discriminatory act 'occurred' on the day that it 'happened.'  A party, therefore, must file a charge within either 180 … days of the date of the act or lose the ability to recover for it."  Id. at 110.  Discrete acts that fall within the statutory period do not make related acts that fall outside the period timely.  Id. at 113.  On the other hand, hostile work environment claims, which are based on the cumulative effects of individual acts, collectively may "constitute 'one unlawful employment practice.'"  Id. at 117.  The Court differentiated between a claim based upon a discrete act--such as termination-- and a claim based upon a hostile work environment, and held that, in relation to a

---

[3] In Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court [under Title VII], but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  Plaintiff has not argued waiver, estoppel, or equitable tolling.

claim based upon a hostile work environment, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  Id.

Plaintiff filed his EEOC charge on May 7, 2014.  The date 180 days before May 7 is November 8, 2013.  The Complaint makes several allegations about Sgt. McKenzie's alleged sexual harassment of the plaintiff, but the latest date on which Sgt. McKenzie made a sexually-suggestive comment or engaged in a sexually-provocative act was March 28, 2013.  (See Compl. ¶ 18.)  Given that plaintiff failed to file his EEOC charge within 180 days after March 28, 2013, any claim for hostile work environment sexual harassment in this Court is barred and should be dismissed.  See Chambers v. Wal-Mart Stores, Inc., 70 F. Supp. 2d 1311, 1314 (N.D. Ga. 1998) (when last incident of alleged sexual harassment occurred in February 1994, and plaintiff's EEOC charge was not filed until October 1994, sexual harassment claim dismissed for failure to file timely charge), aff'd, 193 F.3d 523 (11th Cir. 1999); accord Miner v. Zoë's Kitchen USA LLC, No. 2:14-CV-00729-MHH, 2015 WL 3459012, at *6-7 (N.D. Ala. May 30, 2015) (sexual harassment claim dismissed where no act creating a hostile

work environment occurred after July 12, 2012, but plaintiff waited more than 180 days, or until January 31, 2013, to file an EEOC charge).[4]

### B. Defendants' Motion to Dismiss Count II (Retaliation) Should be Granted in Part

#### 1. Sgt. McKenzie is an Improper Defendant

Plaintiff brings Count II (Title VII retaliation) against both the City and Sgt. McKenzie. However, it is well settled that "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act." Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) (per curiam); see also Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (per curiam) (individual capacity suits under Title VII are inappropriate). Therefore, Sgt. McKenzie should be dismissed as a defendant in Count II.

#### 2. Plaintiff States A Plausible Title VII Retaliation Claim Against the City

Title VII makes it an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a

---

[4] Plaintiff argues that he need not satisfy administrative prerequisites under 42 U.S.C. § 1981. (Pl.'s Resp. [9] 19.) While that is true, plaintiff has alleged no Section 1981 claim here.

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  The first clause of the above-quoted anti-retaliation provision is known as the "opposition" clause, while the second clause is known as the "participation" clause.  Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999).  A plaintiff may establish a prima facie case of retaliation by showing: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal relationship between the two events.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

With regard to the Title VII retaliation claim against the City, defendant appears to base its Motion on the allegations of the EEOC charge instead of on the allegations of the Complaint.  (See Defs.' Br. [5] 7.)  As shown below, the allegations of the Complaint allege a plausible retaliation claim.

Plaintiff alleges that he opposed practices made unlawful by Title VII through the complaint he made to Capt. Gibbs on April 3, 2013 (see Compl. ¶ 21), through the complaints he made to Major Bryant on April 8 and 16, 2013 (id. ¶¶ 22-23), through the complaint he made to the OPS on April 18, 2013 (id. ¶ 24), and through the grievances he filed on October 22 and 31, 2013 (id. ¶¶ 29, 33). He also alleges that he participated in an investigation by filing an EEOC charge on May 7, 2014.  (Id. ¶ 10.)  Plaintiff further alleges that he suffered adverse

employment actions when Sgt. McKenzie opened an OPS package against him on January 7, 2014 (id. ¶ 36), when the APD sustained Sgt. McKenzie's OPS package and issued him a Category B violation and a written reprimand on April 24, 2014 (id. ¶ 37), and when he was denied a transfer in October 2014 (id. ¶ 38). Given the relatively close temporal proximity between some of the alleged protected activity and the alleged adverse employment actions, a causal relationship may be implied. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action."). Therefore, the City's Motion to Dismiss the Title VII retaliation claim against it should be denied.

**C.     Count Three (§ 1983/Equal Protection) Should Be Dismissed**

Count III alleges that both defendants violated plaintiff's right to equal protection of the law as guaranteed by the Fourteenth Amendment. He seeks to remedy that alleged constitutional violation through Section 1983.[5]  Plaintiff

---

[5] **Error! Main Document Only.**Section 1983 provides redress for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  The statute does not furnish any substantive rights, but supplies a method to vindicate federal rights conferred by the Constitution and other statutes described therein, which generally involve Fourteenth Amendment rights.  Baker v. McCollan, 443 U.S. 137 (1979).

claims that his right to equal protection of the laws was violated by alleged retaliation and sexual harassment.  (See Compl. ¶ 60.)

With regard to the alleged retaliation, a "pure or generic retaliation claim … simply does not implicate the Equal Protection Clause."  Watkins v. Bowden, 105 F.3d 1344, 1354-55 (11th Cir. 1997) (per curiam) (citing Ratliff v. DeKalb Cty., 62 F.3d 338, 340 (11th Cir. 1995)); see also Allen-Sherrod ex rel. Stallworth v. Henry Cty. Sch. Dist., No. CIVA 1:05CV0600 JOF, 2007 WL 1020843, at *3 (N.D. Ga. Mar. 27, 2007) ("Plaintiff cannot bring a claim for retaliation under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment."), aff'd sub nom. Allen-Sherrod v. Henry Cty. Sch. Dist., 248 F. App'x 145 (11th Cir. 2007) (per curiam); Hooker v. Fulton Cty., Ga., No. 1:05-CV-982-GET, 2006 WL 2617142, at *15 n.8 (N.D. Ga. Sept. 12, 2006) (plaintiff would not be allowed to bring a section 1983/equal protection claim because no clearly established right exists under the equal protection clause to be free from retaliation).   Therefore, plaintiff's section 1983/equal protection retaliation claim should be dismissed.

With regard to plaintiff's section 1983/equal protection sexual harassment claim, the last act of sexual harassment alleged in the Complaint occurred on March 28, 2013.  (See Compl. ¶ 18.)  Plaintiff filed this action on September 3, 2015.  The statute of limitations "for all section 1983 claims in Georgia is the two year period set forth in O.C.G.A. § 9-3-33 for personal injuries."  Williams v.

City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986); see also Little v. Peach Cty. Sch. Dist., No. CIV A 5:07CV101(CAR), 2009 WL 198003, at *8 (M.D. Ga. Jan. 27, 2009) ("the relevant statute of limitations for Plaintiff's § 1983 claims is two years") (quoting Crowe v. Donald, 528 F.3d 1290, 1292 (11th Cir. 2008)). Because plaintiff waited too long to file this suit, any Section 1983/equal protection sexual harassment claim is barred and should be dismissed.

### D. Count IV (Negligent Supervision/Retention) Should Be Dismissed

Count IV alleges negligent supervision and retention.  In Georgia, an employer has a duty "to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff." Munroe v. Universal Health Servs., Inc., 596 S.E.2d 604, 606 (Ga. 2004).

The Complaint does not accuse the City of negligently supervising or retaining Sgt. McKenzie.  Instead, the Complaint alleges that the City knew or should have known that "high ranking officers who were the decision makers were using improper motives to assign, transfer, promote and intimidate employees."  (Compl. ¶ 64.)   Additionally, plaintiff alleges that the City negligently supervised and retained these unnamed decision makers.  (Id. ¶ 66.)

With regard to a similar bare-boned complaint, this Court held as follows:

> Here, the individuals who allegedly were negligently hired and retained [are] unknown.  So no facts related to these John Does' "'tendencies' or propensities" have been pleaded.  Nor are there any facts about what those who hired them knew or should have known about their background.  Thus, the well-pleaded factual allegations fail to "nudge" Edwards' negligent hiring, training, supervision and retention claim from merely possible to plausible, and count seven will be dismissed.

Edwards v. Wisconsin Pharmacal Co., LLC, 987 F. Supp. 2d 1340, 1347 (N.D. Ga. 2013); see also Pierre v. City of Miramar, Fla., Inc., 537 F. App'x 821, 825 (11th Cir. 2013) (per curiam) (because plaintiff alleged no facts supporting his claims that the City failed to conduct an adequate pre-hire investigation of the defendant Officers, that the City knew or should have known that defendant Officers were unfit for their positions, that the City later became aware or should have become aware of defendant Officers' unfitness but failed to take action, or that the City failed to train or supervise the defendant Officers, he failed to state plausible claims for relief).  Because the well-pleaded factual allegations of this Complaint fail to nudge plaintiff's negligent supervision/retention claim from merely possible to plausible, Count IV should be dismissed.

## E.     Count V (IIED) Should Be Dismissed

In Count V, plaintiff alleges that Sgt. McKenzie intentionally, maliciously, wantonly and in gross and reckless disregard for plaintiff's health and safety,

18

engaged in extreme and outrageous conduct when she subjected him to sexual[6] discrimination and retaliation causing him to suffer great emotional distress, mental anguish, humiliation, and other indignities.  (Compl. ¶ 68.)  As a result of her conduct, plaintiff alleges that he was forced to visit the APD psychologist to help him cope with the stress, lack of sleep, and headaches caused by the aforementioned acts.  (Id. ¶ 69.)  Moreover, plaintiff claims that the stress physically manifested itself by causing headaches and exacerbating his neck and back injuries, for which he received treatment and medication at the VA Medical Center. (Id.)

To maintain an IIED claim under Georgia law, a plaintiff must allege that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress suffered was severe.  Bridges v. Winn-Dixie Atlanta, Inc., 335 S.E.2d 445, 447-48 (Ga. Ct. App. 1985).  "The standard for an intentional infliction of emotional distress claim is very high, and the burden on the plaintiff is a stringent one."  Johnson v. MidFirst Bank, No. 1:14-CV-0573-CC, 2014 WL 4311272, at *4 (N.D. Ga. Sept.

───────────────────

[6] The Complaint alleges race discrimination (Compl. ¶ 68), but given its other allegations, the Court assumes that this was a typographical error and inserts sex discrimination above.

2, 2014).  Whether a defendant's conduct is extreme and outrageous is a question of law.  Yarbray v. S. Bell Tel. & Tel. Co., 409 S.E.2d 835, 838 (Ga. 1991).  "Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Lockhart v. Marine Mfg. Corp., 635 S.E.2d 405, 407 (Ga. Ct. App. 2006) (internal quotation marks omitted).  "Words alone do not typically support an intentional infliction of emotional distress claim."  Fortson v. Columbia Farms Feed Mill, 34 F. Supp. 3d 1302, 1309 (M.D. Ga. 2014).  "Plaintiffs are expected to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind."  Lockhart, 635 S.E.2d at 407 (internal quotation marks omitted).

When examining the myriad of cases where courts have rejected IIED claims, it is clear that the alleged misconduct which occurred during the relevant time period (i.e., beginning September 3, 2013, or two years before suit was filed per O.C.G.A. § 9-3-33) falls far short of stating a claim.[7]  Plaintiff alleges that Sgt.

---

[7] See, e.g., Baynes v. Philips Med. Sys. (Cleveland), Inc., 410 F. App'x 291, 292-93 (11th Cir. 2011) (per curiam) (employer's actions in requiring plaintiff-employee to travel out of town and work for seventeen days (with only one day off) shortly after she underwent heart catheterization, making false accusations against her in meetings that caused her anxiety attacks, placing telephone calls to her while she was on medical leave, improperly disclosing her confidential

McKenzie denied him two days of sick leave because he failed to provide a physician's note (see Compl. ¶ 34) and made a formal complaint about his work performance (id. ¶¶ 35-36).  Because these acts are not extreme and outrageous, Count V (alleging IIED) should be dismissed.

### F.    Plaintiff's Request to Amend

Plaintiff concludes his brief by arguing that, if the Court deems his Complaint deficient in any manner, then he would request leave to amend to address any deficiency.  (Pl.'s Resp. 31.)  Such a request is insufficient.  "Filing a motion is the proper method to request leave to amend a complaint."  Long v.

---

medical information, and terminating her employment for a false reason, failed to state an IIED claim); Puckett v. Bd. of Trs. of First Bapt. Church of Gainesville, Inc., 17 F. Supp. 3d 1339, 1344-45 (N.D. Ga. 2014) (supervisor's alleged derogatory comments to employee's wife about schizophrenia, employer's alleged decision to increase the employee's job duties despite knowledge of employee's schizophrenia, and alleged verbal abuse by employee's immediate supervisor after he refused to sign a disciplinary notice, did not rise to the level of extreme and outrageous conduct necessary to support an IIED claim); Scott v. Shoe Show, Inc., No. 1:12-CV-3286-TWT-RGV, 2013 WL 1624286, at *4 (N.D. Ga. Mar. 13, 2013) (manager's false accusation of theft, continued questioning of plaintiff about store thefts even after she became visibly upset, and coercing plaintiff into writing a false confession, failed to state an IIED claim), report & recommendation adopted, 2013 WL 1565642 (N.D. Ga. Apr. 15, 2013); Bradley v. DeKalb Cty., Ga., No. 1:10-CV-0218-TWT-GGB, 2010 WL 4639240, at *4-5 (N.D. Ga. May 17, 2010) (allegations that defendants harassed plaintiff because he suffered from epileptic seizures, stripped him of his badge and gun, assigned him to screening desk for extended periods, subjected him to multiple fitness-for-duty evaluations without justification, and conducted internal investigations into minor offenses, thus marring his reputation as an officer and causing him professional and personal humiliation, failed to state IIED claim), report & recommendation adopted, 2010 WL 4638887 (N.D. Ga. Nov. 4, 2010).

<u>Satz</u>, 181 F.3d 1275, 1279 (11th Cir. 1999) (per curiam).  A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment.  <u>Id.</u>  Thus, when a request for leave to amend is included only in a memorandum filed in opposition to a motion to dismiss, and the request fails to attach the proposed amendment or set forth the substance of the proposed amendment, a district court does not abuse its discretion in denying plaintiff leave to amend.  <u>Id.</u>  <u>See also</u> <u>Rosenberg v. Gould</u>, 554 F.3d 962, 967 (11th Cir. 2009) (district court did not abuse its discretion in denying request for leave to amend where the request was merely included in a footnote and did not "describe the substance of [the] proposed amendment"); <u>Page v. Branch Banking & Trust Co.</u>, No. 2:14-CV-00055-RWS, 2015 WL 751675, at *4 (N.D. Ga. Feb. 23, 2015) (denying request to amend asserted only in an opposition brief, where plaintiff neither attached a proposed amended complaint nor set forth the substance of the proposed amendment).  Thus, the undersigned **DENIES** leave to amend.

## IV.   <u>CONCLUSION</u>

For the reasons explained above, the undersigned **DENIES** plaintiff leave to amend the Complaint.  The undersigned further

**RECOMMENDS** that Defendants' Motion to Dismiss [5] be **GRANTED IN PART and DENIED IN PART**.   Counts I (Title VII hostile work

environment sexual harassment), III (section 1983/equal protection), IV (negligent supervision/retention), and V (intentional infliction of emotional distress) should be dismissed.  Count II (Title VII retaliation) should be dismissed only as to Sgt. McKenzie.

If these recommendations are adopted, Sgt. McKenzie will be terminated from this action, and the City would remain a defendant only as to Count II.

**SO ORDERED and RECOMMENDED**, this 7th day of December, 2015.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE