IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD HOUSTON,

     Plaintiff,

 v.

CITY OF ATLANTA,

     Defendant.

CIVIL ACTION FILE NO.

1:15-CV-03112-TWT-WEJ

## FINAL  REPORT  AND  RECOMMENDATION

Plaintiff, Richard Houston, a Sergeant with the Atlanta Police Department ("APD"), filed this multi-count civil rights action against his employer, the City of Atlanta ("City").  Given the District Court's Order [18] of January 13, 2016 regarding the Defendant's Motion to Dismiss, the only claim that remains is one for alleged retaliation in violation of Title VII of the Civil Rights Act of 1964. (See Compl. Count II.)  Now pending before this Court is Defendant's Motion for Summary Judgment [52].  For the reasons explained below, the undersigned **RECOMMENDS** that said Motion be **GRANTED**.

## I.    STATEMENT OF FACTS

The Court draws the material facts largely from the parties' submissions. In support of its Motion for Summary Judgment, the City as movant filed a Statement of Undisputed Material Facts ("DSUMF") [52-2].  See N.D. Ga. R.

56.1B.(1).  As required by Local Rule 56.1B.(2)a, plaintiff submitted a response. (See Pl.'s Resp. to Def.'s Stat. of Undisp. Mat. Facts ("PR-DSUMF") [60-10].) As allowed by Local Rule 56.1B.(2)b, plaintiff filed a statement of additional facts which he contends are material and present a genuine issue for trial (see Pl.'s Stat. of Addt'l Facts ("PSAF") [60-11]), to which defendant submitted a response.  (See Def.'s Resp. to Pl.'s Stat. Undisp. Mat. Facts ("DR-PSAF") [71-1].)

As discussed in detail below, plaintiff is a current APD employee suing for retaliation.  However, the undisputed material facts show that plaintiff did not engage in activity protected by Title VII, but even assuming that he did, plaintiff did not suffer a materially adverse employment action.  In fact, during the relevant time frame, plaintiff received only two minor write ups and was promoted to Sergeant.  Because plaintiff cannot establish a prima facie retaliation case, many of the 285 facts proposed by the parties are immaterial and have been excluded on that basis.  (See DSUMF ¶¶ 1, 6-7, 11-21, 23, 31, 42, 46-56, 78, 93, 100-03, 105-08, 111-15; PSAF ¶¶ 1-5, 11-16, 20-25, 29, 32-33, 35-36, 38-39, 41, 44-46, 48-52, 54-57, 61-62, 67, 69-73, 76, 78-83, 86-87, 89-93, 95-97, 99-135, 137-54, 156-58.)[1]

---

[1] Many of these proposed facts are also redundant of others and can be excluded on that basis as well.

As for the remaining material proposed facts, when one side admits a fact proposed by the other, the Court includes that fact as undisputed for the purposes of this Report and Recommendation and cites only the proposed fact. The Court's inclusion of a proposed fact which a party has denied means either that the denial is unsupported by the record evidence cited or any fact dispute is immaterial. Where necessary, the Court rules on objections to proposed facts. The Court sometimes modifies a proposed fact to better reflect the record cited or per the other side's response. Finally, the Court includes some facts drawn from its review of the record. See Fed. R. Civ. P. 56(c)(3).

### A.   Plaintiff's April 18, 2013 Complaint

Plaintiff Houston claims that Michele McKenzie made sexually inappropriate comments and sexual advances to him in 2001 or 2003 when they were both patrol officers, and that she made sexually inappropriate comments and wore sexually provocative clothing around him in 2009 when they were both investigators. (See DSUMF ¶¶ 24-27; see also PSAF ¶¶ 7-8, 10.)

Ms. McKenzie obtained a promotion to sergeant and began serving as plaintiff's supervisor when he worked day watch in the Zone 4 Central Investigations Division. (DSUMF ¶¶ 2, 4-5; see also PSAF ¶¶ 6, 136.)[2] Plaintiff

---

[2] As a supervisor, Sgt. McKenzie was responsible for checking the work of the investigators, managing work schedules, and approving reports. (DSUMF ¶

3

contends that on March 28, 2013, when Sgt. McKenzie was acting as his supervisor, she thrust her pelvic area towards him while standing at his desk and demanded that he greet her. (DSUMF ¶ 28; see also PSAF ¶¶ 17-18.) Plaintiff alleges that he rejected Sgt. McKenzie's sexual advances and informed her that he did not date co-workers. (DSUMF ¶ 29; see also PSAF ¶ 9.)[3]

On April 18, 2013, plaintiff filed a written complaint about Sgt. McKenzie with the APD's Office of Professional Standards ("OPS"). (See Def.'s Ex. E [52-4], at 63-70; see also PSAF ¶ 28.)[4] In support of his complaint, plaintiff gave a

---

8.) Sgt. McKenzie reported to Lt. Bryan Paden until he was replaced by Lt. Charles Hampton. (Id. ¶ 9.) Lt. Paden and Lt. Hampton reported to Major Rodney Bryant. (Id. ¶ 10.)

[3] Also in April 2013, the City hosted the NCAA Final Four men's basketball tournament and implemented twelve-hour shifts for all police officers. (DSUMF ¶ 57.) Officers who were previously approved to work their extra jobs at Turner Field were exempt. (Id. ¶ 58.) Plaintiff contends that he was scheduled to work his extra job at Turner Field, but Sgt. McKenzie denied his request and demanded that he report to work for a twelve-hour shift. (Id. ¶ 59.) On April 3, 2013, plaintiff complained to Capt. Gibbs, who sent Sgt. McKenzie an email advising her that plaintiff was permitted to work his extra job at Turner Field. (Id. ¶ 60.) As such, plaintiff worked his extra job at Turner Field without facing any discipline, reprimand, or reduction in pay or benefits. (Id. ¶ 61.)

[4] Defendant asserts that plaintiff had not complained about Sgt. McKenzie before April 18, 2013. (DSUMF ¶¶ 30, 32-36.) Plaintiff responds that he told certain supervisors before that date that Sgt. McKenzie was creating a hostile work environment for him. (PR-DSUMF ¶¶ 30, 32-36; see also PSAF ¶¶ 19, 26-27.) However, nothing in the record plaintiff cites, and nothing in PSAF, supports the contention that plaintiff complained to management before April 18, 2013 that Sgt. McKenzie was making sexually-related comments to him and/or making unwanted sexual advances towards him. As discussed infra, plaintiff

statement to OPS Investigator Sergeant Fred Watson, who asked plaintiff to explain the basis for his feelings and explain how the situation transpired. (DSUMF ¶ 38.)   Plaintiff typed his response and summarily stated that Sgt. McKenzie was yelling and speaking to him in an aggressive, combative, and argumentative manner.  (Id. ¶ 39.)

Although this OPS complaint of April 18, 2013 states that "[m]y supervisor Sgt. McKenzie has created a [h]ostile work environment" (see Def.'s Ex. E [52-4], at 64; see also DSUMF ¶ 37), it fails to describe any comments or conduct of a sexual nature by Sgt. McKenzie against plaintiff.  (See Houston Dep. [52-3] 159 (admitting that his complaint "did not mention anything about unwanted sexual advances or comments by Sergeant McKenzie").)  Specifically, plaintiff's OPS complaint of April 18, 2013, did not state that Sgt. McKenzie made unwanted sexual advances and comments towards him in 2003 and 2009, did not state that she dressed in a sexually provocative manner, and did not state that Sgt.

---

even failed to include allegations of that nature in his April 18, 2013 OPS complaint.  Plaintiff's Brief asserts that he told his supervisors about the thrusting motion that Sgt. McKenzie made (see Pl.'s Br. [62-2] 6); however, the record citation provided in that Brief is not found in PSAF or PR-DSUMF; therefore, the Court cannot consider it.  (See N.D. Ga. R. 56.1B.(1)(d) ("The court will not consider any fact: . . . set out only in the brief and not in the movant's statement of undisputed facts.").)  In any event, as discussed infra, any dispute over whether plaintiff engaged in protected activity is immaterial given that he suffered no materially adverse employment action.

McKenzie had thrust her pelvis towards him on March 28, 2013 (id. DSUMF ¶¶ 40-41).[5]

### B.   The October 10, 2013 Record of Counseling

On September 5, 2013, Sgt. McKenzie informed plaintiff and three investigators who worked the evening shift and reported to Sgt. Trevor King (Dominique J. Pattillo, Tony Jones, and Calvin Thomas) that she had conducted an audit of the robbery and aggravated assault cases in Zone 4 and found several missing cases notes.  (DSUMF ¶ 79; see also PSAF ¶ 30.)  Sgt. McKenzie informed plaintiff that eleven of his robbery and aggravated assault cases were missing case notes.  (DSUMF ¶ 80.)  Plaintiff replied that he would work on this as soon as he had time.  (PSAF ¶ 31.)

On October 10, 2013, Sgt. McKenzie checked the case management system and found that plaintiff had not updated the eleven cases.  (DSUMF ¶ 81.)  Accordingly, on October 10, 2013, Sgt. McKenzie presented plaintiff with a Record of Counseling, which he refused to sign, and instructed him to complete the updates by October 24, 2013.  (Id. ¶ 82; see also PSAF ¶ 34; Def.'s Ex. I [52-

_____

[5] For reasons immaterial to resolution of this Motion, OPS did not initially investigate plaintiff's April 18, 2013 complaint.  When OPS subsequently investigated the complaint, it obtained a statement from plaintiff on December 24, 2013.  (DSUMF ¶ 124.)  The contents of this statement are addressed infra Part I.D.

6

4], at 87 (Record of Counseling).)   Plaintiff testified that he does not know whether Sgt. McKenzie knew about his April 18, 2013 OPS complaint when she issued this Record of Counseling to him.  (DSUMF ¶ 83.)

### C.   Plaintiff's October 22, 2013 Grievance Against OPS

On October 22, 2013, plaintiff filed a grievance against the OPS for its failure to investigate his April 18, 2013 OPS complaint within 180 days. (DSUMF ¶ 116; see also PSAF ¶¶ 40, 53.)   In accordance with the City Ordinance, plaintiff presented the grievance form to his chain of command–Sgt. McKenzie, Lt. Hampton, and Captain M.S. Kreher–all of whom indicated that it could not be resolved at their levels.  (DSUMF ¶ 117; see also PSAF ¶ 42-43.) Plaintiff did not tell Sgt. McKenzie that he had filed an OPS complaint against her on April 18, 2013, and Sgt. McKenzie had no reason to know that the grievance plaintiff submitted on October 22, 2013 concerned OPS's alleged failure to investigate that April 18, 2013 OPS complaint.   (DSUMF ¶ 118.) Plaintiff did not present a copy of his April 18, 2013 OPS complaint to Lt. Hampton at this time.  (Id. ¶ 119.)

Plaintiff's October 22, 2013 grievance was presented to Deputy Chief E. Renee Propes and Chief George N. Turner.  (DSUMF ¶ 120.)  Upon review of that October 22, 2013 grievance, Deputy Chief Propes agreed that OPS should have investigated plaintiff's April 18, 2013 complaint and provided him with

notice at the onset that there would be no formal investigation.  (Id. ¶ 121.) Plaintiff was directed to present his October 22, 2013 grievance to Chief Turner, who reviewed it and directed OPS to investigate plaintiff's April 18, 2013 OPS complaint and provide plaintiff with its findings.  (Id. ¶ 122; see also PSAF ¶ 68.) OPS conducted an investigation of plaintiff's April 18, 2013 OPS complaint. (DSUMF ¶ 123, as modified per PR-DSUMF ¶ 123.)  As part of that investigation, OPS collected a supplemental statement from plaintiff on December 24, 2013, discussed in the following subsection.  OPS eventually reported to plaintiff that it did not view his allegations against Sgt. McKenzie as warranting an official investigation.  (PSAF ¶ 47.)

### D.    Plaintiff's Supplemental Statement of December 24, 2013

On December 24, 2013, plaintiff provided a supplemental statement to OPS about his April 18, 2013 complaint against Sgt. McKenzie.  (DSUMF ¶ 43; see also PSAF ¶ 74; Def.'s Ex. F [52-4], at 71-78 (copy of statement).)  Investigator Adrienne D. Prince interviewed plaintiff.  (DSUMF ¶ 44.)  Although plaintiff's statement contains the words "harassment" and "hostile work environment," he did not allege that Sgt. McKenzie had made unwanted sexual advances toward him or made sexually inappropriate comments to him.  (Id. ¶ 45.)  Sgt. McKenzie also testified that she was unaware of plaintiff's December 24, 2013 statement. (Id. ¶ 125.)   Sgt. McKenzie contends that she did not learn about plaintiff's

allegations against her of "hostile work environment or harassment or whatever he is alleging this to be" until the month before she gave a statement to OPS on April 14, 2014.  (Id. ¶ 126; see also Def.'s Ex. FF [52-6], at 18.)

### E.    Sgt. McKenzie's January 6, 2014 Request for OPS Investigation

On October 16, 2013, plaintiff advised Sgt. McKenzie that he needed four days with no new case assignments in order to complete the case notes or re-investigate those cases.  (DSUMF ¶ 84; see also PSAF ¶ 37.)  On October 24, 2013, Sgt. McKenzie informed plaintiff and his colleagues that investigators would be given one free week of no new case assignments to help them complete the case notes.  (DSUMF ¶ 85.)  According to plaintiff, Lt. Hampton needed him to work on new cases so he did not receive the planned week free of new case assignments.  (PR-DSUMF ¶ 86; see also DSUMF ¶ 104.)  However, Sgt. McKenzie had expected plaintiff to complete the case notes during that week. (DSUMF ¶ 87.)[6]

_____

[6] While this was going on, plaintiff and Sgt. McKenzie had a disagreement about plaintiff taking sick leave.  The procedure for requesting leave for sick or vacation varied per supervisor.  (DSUMF ¶ 62.)  Plaintiff alleges that Sgt. McKenzie denied his request for sick leave on November 4 and 11, 2013 for failure to complete an Attendance Verification form and to present a doctor's note. (Id. ¶ 63; see also PSAF ¶¶ 58-59, 63-66.)  Plaintiff complained to Lt. Hampton, who approved plaintiff's request for sick leave.  (DSUMF ¶ 64; see also PSAF ¶ 60.)  Plaintiff did not suffer any discipline or reprimand for taking sick leave on November 4 or 11, 2013.  (DSUMF ¶ 65.)

When plaintiff did not complete the case notes, in a memorandum dated January 6, 2014, Sgt. McKenzie requested that OPS open an investigation of him. (DSUMF ¶ 88; see also PSAF ¶ 75.)  The basis for her request was as follows:

> I am requesting an OPS investigation be opened on INV Houston for the following reasons pertaining to his case management.   In September I was asked to review CIDs aggravated assaults and robberies year to date and to make sure if we had any outstanding warrants to make sure that a fugitive package was submitted.  I saw that INV Houston had 11 cases with no case notes in his case management.  He was notified by email on September 5, 2013.  On October 10, 2013 he was formally counseled for not completing any case management documentation associated with the 11 cases provided to him.   On October 16, 2013 he responded by email stating that he needed [four] days of no case assignment in order to complete the task.   On October 24, 2013 he was also made aware that he had a significant amount of cases in his case management that needed follow up investigations or disposal.  INV Houston's request was honored for no case assignment from November 3rd -9th.  Those 11 cases were still not updated in case management as well as 77 part I and II crimes that were assigned to him have no case management.   I attempted to review his weeklies in order to assess his productivity, case assignment, and case disposal, out of 39 weeklies that should have been submitted he only submitted 17.  The 17 that were submitted revealed that he was not accurately documenting his productivity and case disposal.

(DSUMF ¶ 89; see also Def.'s Ex. L [52-4], at 93 (Sgt. McKenzie's memo).

Sgt. King conducted the OPS investigation.   (DSUMF ¶¶ 90-91; see also PSAF ¶ 77.)  He found that plaintiff had not violated Work Rule 4.2.9. (Failure to

Obey Supervisory Personnel).   (DSUMF ¶ 92; see also PSAF ¶84.)[7]   Sgt. King

presented his findings to his chain of command–Lt. Hampton–who did not concur

with Sgt. King's findings.  (PSAF ¶ 85.)  Lt. Hampton explained the basis for his

disapproval as follows:

> On Tuesday, March 4, 2014 I received an OPS file conducted by
> Sergeant Trevor KING regarding a work rule violation by
> Investigator Richard HOUSTON.  Based upon the review of the file
> I did not concur with the deposition of Unfounded.  On Tuesday,
> Wednesday, March 5, 2014 at 1145 hours, I went into ICIS and
> looked in Case Management at the 11 cases that are the basis of this
> OPS complaint.  As of today, the 11 cases still have no case notes
> within Case Management.  I have attached a screen shot of these 11
> cases that are in question[].

(DSUMF ¶ 94.)  Based on his investigation, Lt. Hampton found that plaintiff was

in violation of Work Rule 4.2.9–Failure to Obey Supervisory Personnel.  (Id. ¶

95.)   The disposition was reviewed and concurred by Captain M. S. Kreher,

Major Rodney Bryant, and Deputy Chief Joseph P. Spillance.  (Id. ¶ 96.)

On March 6, 2014, OPS changed plaintiff's work rule violation from 4.2.9

(Failure to Obey Supervisory Personnel) to 4.2.37 (Unsatisfactory Performance).

---

[7] Elsewhere plaintiff objects to the work rules (or Standard Operating
Procedures ("SOP")) cited by defendant (Def.'s Ex. Ex. R [52-5], at 42-49)
because their effective date–September 15, 2015–postdates some of the events in
this case.  (See PR-DSUMF ¶¶ 88, 97.)  However, plaintiff admits the validity of
Work Rule 4.2.9 in PR-DSUMF ¶ 92.  Because there has been no showing that
the content of any SOP changed in a material way on September 15, 2015, the
Court overrules those objections.

11

(DSUMF ¶ 97; <u>see also</u> PSAF ¶ 88.)[8]  On March 27, 2014, Lt. Paden presented plaintiff with a "Letter of Written Reprimand" for violation of work rule 4.2.37 (Unsatisfactory Performance) for "failing to enter case notes on investigations while assigned to Zone 4 CID."  (DSUMF ¶ 98.)  This document also states as follows:  "This Letter of Reprimand will serve to place you on notice that a future violation of a similar nature will result in more severe disciplinary action."  (<u>See</u> Def.'s Ex. P [52-5], at 39 (copy of letter).)[9]

Plaintiff did not suffer a loss of pay or benefits as a result of the written reprimand that he received.  (DSUMF ¶ 110.)  It is a Category "B" violation under APD's policies.  (<u>See</u> PR-DSUMF ¶ 22, agreeing that a written reprimand is a "non-adverse disciplinary action"; <u>see also</u> PSAF ¶ 94.)  Following receipt of such a reprimand, an officer has a "reckoning period" of three years.  (DSUMF ¶ 109; <u>see also</u> Def.'s Ex. [D], at 27-28 (APD.SOP.2020 §§ 4.3.1 and 4.3.3.)  Any

---

[8] Work Rule 4.2.37, Unsatisfactory Performance, provides as follows:

Employees shall maintain sufficient competency to perform their duties and assume the responsibilities of their position.  Employees shall perform their duties in a manner which shall establish and maintain the highest standards of efficiency in carrying out the functions and objectives of the Department.

(Def.'s Ex. R [52-5], at 48.)

[9] Plaintiff filed a grievance over issuance of this written reprimand. (DSUMF ¶ 99.)  By letter dated May 16, 2014, Chief Turner notified plaintiff that his grievance had been denied.  (Def.'s Ex. Q [52-5], at 41)

repeated violation of the same work rule or similar or related work rule during the reckoning period will result in a progressively higher category of violation. (DSUMF ¶ 109.)  It is undisputed that plaintiff has received no further discipline during this reckoning period and that it expires on March 27, 2017.

###### F.   Plaintiff's March 12, 2014 Promotion to Sergeant

To qualify for a promotion to sergeant, an employee must pass an oral and written examination.  Successful candidates are placed on a "Sergeant's list" in the order of his or her score, and promoted in a linear fashion when positions become available.  (DSUMF ¶ 67.)  Plaintiff was the last candidate on the list and received a promotion to Sergeant in Zone 5 on March 12, 2014 when a position became available.  (Id. ¶¶ 3, 68.)[10]  As can be seen from the chronology, about the same time of plaintiff's promotion, he received the aforementioned Letter of Written Reprimand.

---

[10] Plaintiff alleges that in December 2013, Sgt. McKenzie had threatened to impede his promotion from Investigator to Sergeant.  (DSUMF ¶ 66.)  However, Sgt. McKenzie played no role in plaintiff's promotional opportunities.  (Id. ¶ 69.)

### G.   OPS Rejects Plaintiff's April 18, 2013 Complaint

On May 1, 2014, OPS did not recommend sustaining the complaint that plaintiff had made against Sgt. McKenzie (dated April 18, 2013) for violating work rules regarding Courtesy and Manner of Issuing Orders.  (DSUMF ¶ 127.)

### H.   Plaintiff's May 7, 2014 EEOC Charge

On May 7, 2014, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (See Def.'s Ex. DD [52-6], at 8.)  In the section of the charge which asks what type of discrimination is alleged, plaintiff placed an "X" in the box beside the word "Retaliation."  (Id.; see also PSAF ¶ 155.)  Under the heading "Date(s) discrimination book place," plaintiff listed the earliest date as April 1, 2013, and the latest date as March 20, 2014.  (Def.'s Ex. DD [52-6], at 8.)   The particulars of discrimination alleged in the charge are as follows:

I.   I was hired as a Police Officer by the above named employer in March 2003.  I was harassed by my supervisor Sergeant Michelle McKenzie.  I complained to my employer about the unwelcome conduct in April of 2013, however, no corrective action was taken.  I was promoted to Sergeant on or about 3/13/14.  I was disciplined, on or about 3/20/14, in retaliation for opposing discrimination.

II.   Employer's reason for adverse employment action:   I was given a level B reprimand for unsatisfactory performance.

III.   I believe I have been discriminated against in retaliation for participation in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

14

(Id.)

## I.   Denial of Transfer to Plaintiff on October 6, 2014

Plaintiff alleges that on October 6, 2014, Major Whitmire, Zone Commander, denied his request to transfer to Field Operations Zone 5 Underground Unit in favor of a junior sergeant.  (DSUMF ¶ 70; see also PSAF ¶ 98.)[11]  Plaintiff received the next available transfer from evening watch mobile to day watch mobile.  (DSUMF ¶ 73.)  Plaintiff testified that Mayor Whitmire was aware of the April 18, 2013 OPS complaint that he had filed against Sgt. McKenzie and of his October 22, 2013 grievance against OPS for not investigating the April 18, 2013 OPS complaint.  However, plaintiff does have any evidence that Mayor Whitmire denied his transfer request because of either the complaint or the grievance, other than the fact that plaintiff's seniority was disregarded in the denial of the October 6, 2014 transfer request.  (Id. ¶ 71.)

## J.   Plaintiff's Reassignment to Evening Watch in October 2014

In October 2016, Captain Michael Kreher, Assistant Section Commander of Zone 5, reassigned plaintiff from day watch to evening watch.  (DSUMF ¶ 74, as modified per PR-DSUMF ¶ 74.)  Plaintiff contends that he was reassigned in

---

[11] Plaintiff did not file a complaint regarding Major Whitmire's denial of his transfer request.  (DSUMF ¶ 72.)

retaliation for proposing a policy change to the APD's SOP regarding off-duty weapons.[12] (DSUMF ¶ 75.)  Plaintiff also alleges that the reassignment prevented him from working his extra jobs at Georgia World Congress Center and the Georgia Dome.  (Id. ¶ 77.)

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  <u>Rice-Lamar v. City of Fort Lauderdale</u>, 232 F.3d 836, 840 (11th Cir. 2000) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed

---

[12] APD has not yet issued a decision regarding plaintiff's recommendation to modify the SOP on off-duty weapons.  (DSUMF ¶ 76.)

a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.   Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate.  Rice-Lamar, 232 F.3d at 840.  "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party."  Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried.  Anderson, 477 U.S. at 251.  The applicable substantive law will identify those facts that are material.  Id. at 248.  Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  Id.  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the

17

nonmoving party." Id.  For factual issues to be "genuine," they must have a real basis in the record.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." Id. at 587.

## III.   **DISCUSSION**

Plaintiff's only claim is for Title VII retaliation.  When a plaintiff relies on circumstantial evidence, as Sgt. Houston does here, courts apply the McDonnell Douglas burden-shifting framework to determine whether his claim should survive a motion for summary judgment.  See Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).  Under this framework, a retaliation plaintiff may establish a prima facie case by showing that (1) he engaged in activity protected by Title VII; (2) he suffered a materially adverse employment action; and (3) there was a causal relationship between the two.  See Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012).  If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action, which the plaintiff can then rebut by showing that the proffered reason was merely pretextual.  Brown, 597 F.3d at 1181-82.  If the plaintiff is unable to establish a prima facie case, then summary judgment must be entered for the defendant.  See Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005) (per curiam); Turlington v.

18

Atlanta Gas Light Co., 135 F.3d 1428, 1433 (11th Cir. 1998) ("[S]ummary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a *prima facie* case.").

### A.    Plaintiff's Protected Activity

Title VII makes it an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The first clause of the above-quoted anti-retaliation provision is known as the "opposition" clause, while the second clause is known as the "participation" clause.  Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999).

Plaintiff engaged in activity protected by Title VII's participation clause when he filed an EEOC charge on May 7, 2014.  See Berman v. Orkin Exterminating Co., 160 F.3d 697, 702 (11th Cir. 1998) (holding that filing of EEOC charge is protected activity).  As the Statement of Facts makes clear, however, nothing adverse happened to plaintiff after he filed that EEOC charge. There is no evidence that the person who initially denied plaintiff's transfer on October 6, 2014, Major Whitmire, even knew of plaintiff's EEOC charge, so he could not have acted with a retaliatory motive.  See Brungart v. BellSouth

19

Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him.").  Even if Major Whitmire did know about the EEOC charge, so much time elapsed between its filing in May 2014 and the initial denial of plaintiff's transfer in October 2014— five months—that no causal connection may be inferred.[13]  Also, denial of a lateral transfer is not an adverse employment action.  See Barnhart v. Wal-Mart Stores, Inc., 206 F. App'x 890, 893 (11th Cir. 2006) (per curiam) ("the refusal to give an employee [a lateral] transfer cannot be an adverse employment action").

With regard to the transfer from day to evening shift in October 2014, there is no evidence that Mayor Kreher knew of the charge, and even if he did, the transfer denial occurred well after plaintiff filed his charge.  Moreover, plaintiff testified that Mayor Kreher transferred him in retaliation for proposing a policy change to APD's SOP regarding off-duty weapons, not for engaging in activity

_____

[13] "A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case."  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).  The converse is also true.  "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." Id.  In this Circuit, three to four months is a substantial delay which negates any inference of causation by timing alone.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam).

protected by Title VII.   Thus, plaintiff therefore has no participation clause retaliation claim related to this transfer.

The parties disagree on whether plaintiff engaged in activity protected by Title VII's opposition clause.   Sgt. Houston can establish that he engaged in statutorily protected activity under Title VII's opposition clause only if "he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."   Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).   Plaintiff must show not only that he subjectively believed he was being discriminated against but also "that his belief was *objectively* reasonable in light of the facts and record presented."   Id.   "The objective reasonableness of an employee's belief that [his] employer has engaged in an unlawful employment practice must be measured against existing substantive law."   Clover, 176 F.3d at 1351.

"Statutorily protected activity must include, at the very least, an employee's communication to the employer of h[is] belief that discrimination has occurred or is occurring."   Graham v. Mem'l Health Univ. Med. Ctr., No. CV411-316, 2013 WL 5444733, at *9 (S.D. Ga. Sept. 30, 2013).   Plaintiff may have complained to Lt. Paden on March 28, 2013 that Sgt. McKenzie was creating a hostile environment by screaming and yelling.   Moreover, plaintiff wrote in his April 13, 2013 OPS complaint that Sgt. McKenzie was yelling and

speaking to him in an aggressive, combative, and argumentative manner and creating a hostile work environment, but he never described any comments or conduct of a sexual nature by Sgt. McKenzie.   Also, nothing in the OPS complaint can be read as showing that Sgt. McKenzie was retaliating against plaintiff because he had told her to stop her alleged improper sexual comments or conduct.  Plaintiff also failed to show that he was opposing conduct prohibited by Title VII in his supplemental statement to OPS on December 24, 2013.

Simply saying or writing that someone has created a "hostile work environment" is not enough.  See Graham, 2013 WL 5444733, at *10 (plaintiff's claim that her workplace was a hostile work environment, "alone and without reference to race or discrimination, does not qualify as statutorily protected expression because it does not convey a belief of racial discrimination"); see also Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1323 (N.D. Ga. 2009) (in an opposition clause claim, "the employee must, at the very least, communicate her belief that discrimination is occurring to the employer.  It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred.").  Given that plaintiff never put his employer on notice of any alleged sexual harassment by Sgt. McKenzie, he has failed to establish element one of his prima facie case.

### B.   <u>Plaintiff Suffered No Materially Adverse Employment Action</u>

Assuming that plaintiff established that he had engaged in protected activity, his claim fails at element two of his prima facie case.  To establish element two, a retaliation plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (internal quotation marks and citations deleted).  The Supreme Court in <u>Burlington</u> explained the "materially adverse" requirement as follows:

> We speak of material adversity because we believe it is important to separate significant from trivial harms.  Title VII, we have said, does not set forth "a general civility code for the American workplace." <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L.Ed.2d 201 (1998); <u>see</u> <u>Faragher</u> [v. City of Boca Raton], 524 U.S. [775], 788, 118 S. Ct. 2275 [(1998)] (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.  <u>See</u> 1 B. Lindemann & P. Grossman, <u>Employment Discrimination Law</u> 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing'" by supervisors and co-workers" are not actionable under § 704(a)).  The antiretaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms.  <u>Robinson</u> [v. Shell Oil Co.], 519 U.S. [337], 346, 117 S. Ct. 843 [(1997)].  It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers.  <u>Ibid.</u>

>And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. <u>See</u> 2 EEOC 1998 Manual § 8, p. 8-13.

<u>Id.</u>; <u>see also</u> <u>Webb-Edwards v. Orange Cty. Sheriff's Office</u>, 525 F.3d 1013, 1031 (11th Cir. 2008) (citing <u>Burlington</u>, 524 U.S. at 761, and defining an adverse employment action as "[a] tangible employment action constitut[ing] significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits").

Although "Title VII does not require proof of direct economic consequences in all cases," <u>Holland v. Gee</u>, 677 F.3d 1047, 1057 (11th Cir. 2012) (internal quotation marks omitted), "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." <u>Webb–Edwards</u>, 525 F.3d at 1031. Moreover, the employee's subjective view of the adversity accompanying a particular action is not dispositive or even necessarily probative; rather, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." <u>Butler v. Ala. Dep't of Transp.</u>, 536 F.3d 1209, 1215 (11th Cir. 2008) (quoting <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1239 (11th Cir. 2001)). To prove a materially adverse employment action, "'an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.'" <u>Holland</u>, 677 F.3d at 1057 (emphasis

in original) (quoting Davis, 245 F.3d at 1239).  For example, a transfer can be a materially adverse employment action only "if it involves a reduction in pay, prestige or responsibility."  Hinson v. Clinch Cty., Ga. Bd. of Educ., 231 F.3d 821, 829 (11th Cir. 2000).

The undisputed material facts show that Sgt. McKenzie gave plaintiff a counseling memo on October 10, 2013, and that Lt. Paden gave plaintiff a written reprimand for unsatisfactory performance on March 27, 2014.   These two disciplinary documents came with no negative consequences for Sgt. Houston. He lost no pay and had no serious and material change in the terms, conditions, or privileges of his employment.  As such, neither document was materially adverse. See Brown v. Snow, 440 F.3d 1259, 1265 (11th Cir. 2006) (a lower score on a performance evaluation, by itself, is not actionable under Title VII); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001) (negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation); Wallace v. Ga. Dep't of Transp., 212 F. App'x 799, 801 (11th Cir. 2006) (per curiam) (written reprimand does not constitute an adverse employment action); Ausby v. Fla., 624 F. Supp. 2d 1353, 1363-65 (M.D. Fla. 2008) (finding no adverse employment action where a written reprimand had no tangible impact on the plaintiff's employment).

25

Despite plaintiff's claim that he was the victim of retaliation, the City promoted him to Sergeant during the relevant time period. Because there is no probative evidence that plaintiff suffered a materially adverse employment action, he fails to establish the second element of his prima facie case. Given plaintiff's failure to establish a prima facie retaliation case, summary judgment should be entered for defendant. See Turlington, 135 F.3d at 1433. There is no need to continue the McDonald Douglas analysis. Morris, 402 F.3d at 1082.

## IV.   CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [52] be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO RECOMMENDED**, this 21st day of February, 2017.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE